May it please the court, my name is Steve Canigliaro, court-appointed pro bono amicus curia counsel, arguing today on behalf of the petitioner. Before I determine how much time to reserve for rebuttal, I want to spring to the court's attention that I just found out this morning. You may or may not know James Rosenberg, who is the petitioner's private counsel, was disbarred from this court, and it's my understanding that he asked Mr. Burke to come here today on his behalf. He wasn't quite sure if his firm still had any obligations to the petitioner. So he's asked if he can make a short argument on rebuttal, and I'm willing to let him do that. I don't think I need the full ten minutes, but it was sort of, he's made a notice to appear and the clerk has it, but it's obviously up to the court as to whether or not. Why don't we, would a minute be sufficient? Okay, we'll make sure to give you a minute. Okay. Thank you, Your Honor. Today's appeal can be decided by answering just two questions. The first question is whether a challenge to the failure to use the cumulative hardship analysis presents this court with a question of law. If you could speak up a little bit, please. And the second question is whether the BIA and the IJ actually fail to use this cumulative hardship analysis in this case. Affirmatively answering the first question should give this court jurisdiction, and affirmatively answering the second question should entitle this petitioner to a remand. We do not dispute that Herrera substantially curves this court's jurisdiction and prevents this court from hearing discretionary determinations. That being said, however, I would think the government doesn't dispute that the Real Idea Act of 2005 expands this court's jurisdiction and allows this court to hear questions of law or constitutional challenges. I think the only real dispute on jurisdiction is whether a failure to use the cumulative hardship analysis actually constitutes an error of law. We cite over a half dozen cases in our briefs which says it does. For example, in the cancellation of removal context, we cite Cortez Rivera v. Gonzalez and Mascuro v. Gonzalez. In both cases, this court remanded the matters back to the BIA for the IJ's failure to consider the hardship evidence cumulatively when considering exceptional and extremely unusual hardship. Assuming that those cases are right, and you included them and they're mem disposed, but nowadays you're actually allowed to do that, what tells us that in this case the IJ failed to consider the cumulative hardship? I think there are really two things. I acknowledge she acknowledged the cumulative hardship standard in her opinion, but there's two things. I think reading the opinion on its face really shows that on the totality of opinion, I don't really see anything in there that shows that she used a cumulative hardship analysis. I think she evaluated all the factors in isolation, and I think the second point that's more worrisome to me is that I think there are a bunch of red flag keywords that she uses. For example, I think at one point she says petitioner's son does not show exceptional and extremely unusual hardship simply because he doesn't have access to fresh milk and medical health insurance. I think when you say something like simply because, it makes me think that you're restricting that analysis to just that portion of the opinion. So your argument is that even though they say they've used the word looking at the evidence cumulatively, that they have to, the IJs have to flush that out. I think so. They have to give an explanation that shows they actually engaged in a cumulative analysis. Is that what the whole? Yeah, that is. That's our main argument. And I think that in this case, each of the arguments was taken up individually in successive paragraphs. And I think that each time she considered those arguments in isolation and invariably determined that those did not constitute exceptional and extremely unusual hardship, she sort of then moved on to the next question, to the next piece of hardship evidence and asked the same question. And invariably, she came down with the same answer. So I feel like there's really cultural, political, social education. Let me ask you this. How would you put everything all together to demonstrate all put all the factors and circumstances? How would you put it all together to show that that she could could have done the kind of cumulative analysis that she should have? Right. I think there's a couple of ways she could have done it. I mean, one of the one of the biggest things I think she could have done is done this all in one paragraph, basically listing what the hardship factors were sort of in summation before she mentions the standard. And basically acknowledge the fact that although no one hardship factor has to constitute exceptional, extremely unusual hardship on itself, that an accumulation of several smaller hardship factors can actually contribute to exceptional and can actually be exceptional and extremely unusual. So what I would have done in this case, if I were in her shoes, is I would have taken time, maybe to just do a paragraph or two to really summarize what the evidence says and just give me more comfort that she actually thought about the evidence at the time cumulatively. Well, she did. She she did do a pretty good review of the evidence. No, I think you're right. She did. I mean, she definitely I don't think she left out any factors. Yeah, I think the way they were considered probably wasn't proper. And and it's sort of the difficulty is I think the jurisdiction in this case, your argument is really is that if we if we conclude that that there is jurisdiction along with them, the men dispose that Judge Fletcher was was pointing pointing out and we concluded looking at this, that she didn't engage in a cumulative analysis. And you would have us remand for the board to do for the IJ to do that or the board to do that. Is that right? That's right. I think I was actually I know in our briefs we asked her to go back to the BIA and I was giving some thought to this fact as to whether she go to the IJ or the BIA. I think it went back to the BIA. We'd actually ask for it for a motion to reopen. And I'm sure the government would oppose that. And there's obviously no guarantee that the BIA would grant it. But because of the facts in this case, I think there's two things that really I'd like to put in the record that aren't there now. One of them is the fact that the I think a travel warning issued by the State Department was submitted for the first time on appeal. It was in Mr. Rosenberg's opening brief. So that's not in the record, which basically shows that there are some hardships to American citizens in Indonesia. And I think the other big factor is at the time of the IJ's hearing, Mr. Seifuddin's American citizen son was four years old. And so the hardships to him then compared to the hardships for him now, he'll be nine in January, could very well be much different. So although I think it's a question of law that really should go to the BIA, if this court were willing to send it to the IJ, I think that would be better for us in the first instance. And there is some authority to do that. I think in Judge Fletcher's opinion and Zang v. Gonzalez, which is a persecution case, he sends it directly to the IJ in that matter. I know both of the cancellation and removal cases we cite, the case goes straight to the BIA. Well, you know, the BIA can't engage in any fact-finding, to the extent there's fact-finding, they would they would have to send it back to the IJ. It was my impression they didn't have to, though. I don't know. Maybe they could. I don't know. I haven't really thought about it. I haven't thought that far because I was trying to, in my own mind, you know, I know as a former, as a district court judge, you know, as a judge, you look at stuff and consider all these factors. Right. And here's my decision. Right. I acknowledge it's really difficult. But unless the Ninth Circuit would say you've got to, you've got the record has got to reflect exactly what you were thinking. Right. You know, by findings of fact and whatnot. I always assumed that that was, you know, sufficient. Yeah. And the son is the only qualifying relative. That's right. The only hardship we get to consider cumulatively or otherwise is as to this, as to the boy. Yeah, I think there really is two kinds of hardships. You can have multiple hardships to one relative or or multiple multiple relatives with one hardship. And in our case, we just have one qualifying relative. Yeah. His his wife, I think, is also here illegally. And I'm not sure as far as the immigration proceedings before the IJ say she has not been at this point issued a notice to appear. So I'm not quite sure. I mean, that was five years ago. Like I said, I'm not quite sure where she's where she is in the process. But my understanding is if petitioner is deported, she's willing to go back with him. Right. And OK, why don't we hear from the government at this point and then we'll we'll give you a chance to say something after we first thank you. Good morning, your honors. May it please the court. My name is Corey Farrell and I'm here today on behalf of the attorney general. The issue presented in this case is whether this court has jurisdiction to review the agency's denial of petitioner's application for cancellation of removal for failure to establish exceptional and extremely unusual hardship. In this case, petitioner has not presented a colorable question of law over which this court may exercise jurisdiction and therefore the petition for review should be dismissed. While petitioners do argue, petitioner argues that the immigration judge failed to cumulatively consider all of the hardship, the record in this case, the immigration judge's decision shows that she summarized the evidence, analyzed the hardship and then finally concluded that cumulatively taking all of this together, that petitioner failed to show the hardship to a son rose to the level of exceptional and extremely unusual. There is nothing in the immigration statute or the regulations that requires magic words or a magic formulation for the immigration judge to follow. And I think here the record shows that she didn't leave out any factors or give disproportionate weight to any factors that she looked at everything together and then taking the totality found that the hardship requirement. Now do you argue with the conceptual proposition that if the IJ had not considered the hardships cumulatively that we would have jurisdiction? No, I don't argue with that. So the question really is whether the IJ did or did not. That's correct. And just labeling it as a legal question, we need to look at what she actually did. But if the immigration judge did not consider it cumulatively or applied the wrong legal standard, that would give this. Then that's an appropriate basis for remand. Yeah, that's correct. But in here, if we look at the decision as a whole and don't just take out bits and pieces of it, I think that the immigration judge did apply the correct standard. If there are no further questions for the foregoing reasons, the court should dismiss the petition. Thank you. Mr. Burke, why don't you go first for a minute or so? And then, Mr. Conigliaro, if you want to speak, you'll also do so. I do want to keep my remarks limited to a minute to afford the greatest amount of time to my colleague. I'm going to state very, very quickly that in reviewing this case for this argument today, I stopped under Section 1252B at the phrase, any other decision or action of the Attorney General or the Secretary of Homeland Security, the authority for which is specified under this title, to be in the discretion of the Attorney General. Now, this court has previously looked at other elements of the non-LPR cancellation of removal and said, OK, you've got the ultimate decision, which is a discretionary decision. And now we've got four little threshold prongs, which don't specify that they're in the discretion of the Attorney General. There are guiding legal principles. This is decided under the permanent rules, not under the transitional rules. So we have to make sure that we're analyzing it according to the language of the permanent rules. And I think, to throw out a citation, Spencer Enterprises versus United States would at least permit the finding that this is not necessarily a discretionary decision. And with that, I will cap my remarks.  Thank you. Thank you, Your Honor. Mr. Pinckley, could you use a minute? I have two points on that. All right. The first point is with respect to whether or not the claim is colorable. I think the case law just says it has to be non-frivolous or have some possibility of validity. I would just submit to the Court that based on the cases we cited, they're certainly non-frivolous. And I think a fair review of her opinion would say that our claim has some possibility of validity. The other point I wanted to make is just to make it clear to this Court that we're not asking for the Court to reweigh the factors. I think by the nature of our relief, namely remand, we're just asking for this Court to find that there was a legal error and that the I.J. didn't commit to the proper legal standard. We're not asking for a hardship determination. Right. Correct. Thank you very much. I have two questions. The first is the case of – and I'm sorry about my mispronunciation – Zinfand v. MacCasey is submitted for decision. And I'd like to say before you step down, we very much appreciate your doing this pro bono. Thank you very much. Your work was excellent and the Court appreciates it. Thank you. The case is now submitted for decision. The next one on the argument calendar is Sanchez-Luna v. MacCasey. When you're ready.
judges: Fletcher, Paez, Duffy